IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| TRANSPORTATION ALLIANCE BANK, <br><br> Plaintiff, <br><br> v. <br><br> HELPING HANDS HOUSING I, et al., <br><br> Defendants. | MEMORANDUM DECISION AND ORDER <br><br> Case No. 1:13-cv-46 <br><br> Judge Robert J. Shelby |

This case involves a loan agreement gone awry. Transportation Alliance Bank (TAB Bank) entered into the agreement with Helping Hands Housing I, LLC. Point Capital Partners, LLC negotiated the agreement and served as the guarantor. A few months later, Helping Hands defaulted and litigation ensued. TAB Bank sued Point Capital and Helping Hands, along with Point Capital's managing members Richard Swift and Theodore Williams, alleging breach of contract, unjust enrichment, fraud, and civil conspiracy. TAB Bank also moved for appointment of a receiver, which the court granted.

Mr. Swift now moves for summary judgment on the fraud, civil conspiracy, and unjust enrichment claims against him. For the reasons stated below, the court grants in part and denies in part his motion. The court dismisses the fraud and unjust enrichment[1] claims, but a genuine dispute of material facts remains regarding the civil conspiracy claim.

## BACKGROUND

Point Capital owns Helping Hands. Together, the companies purchase, sell, and service distressed residential real-estate assets and mortgage loans. In November 2011, after weeks of

---
[1] TAB Bank concedes that the unjust enrichment claim against Mr. Swift should be dismissed.

1

negotiations, Point Capital secured a $10 million loan from TAB Bank to enable Helping Hands to purchase distressed real estate.

Leading up to the agreement, the parties negotiated TAB Bank's security interests. TAB Bank contends that, along with other security interests, Point Capital pledged its carried interest in an entity named Last Mile Properties. TAB Bank presents testimony and documentary evidence to support its contention, including an email from Mr. Williams to TAB Bank employees that stated, "[The letter of intent] should read that Point Capital Partners will pledge its capital and earned profits from entities that are managed by the Point Capital Portland business unit. This includes the capital and earned/carried profits in Last Mile Properties, LLC . . . ."

Conversely, Point Capital maintains that it did not pledge the Last Mile interest and that the Last Mile operating agreement prohibited the pledge. Point Capital also points to the deposition testimony of Tim Valdez (TAB Bank's chief loan officer at the time) that he knew Point Capital could not pledge the interest.

During the negotiations, Mr. Williams and Mr. Swift were the managing members of Point Capital. The parties dispute the extent of Mr. Swift's involvement in the negotiations. Mr. Swift and others testified that he did not participate in the negotiations. TAB Bank presents no evidence that Mr. Swift made any representations regarding Last Mile to any employee of TAB Bank. Rather, TAB Bank submits documentary evidence, including emails, showing that Mr. Swift was aware of the negotiations, and consulted with Mr. Williams and other Point Capital employees involved with the transaction.

## ANALYSIS

### I. Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] The court "view[s] the evidence and make[s] all reasonable inferences in the light most favorable to the nonmoving party."[3]

### II. Fraud

To prevail on its fraud claim, TAB Bank must prove by clear and convincing evidence[4]:

> (1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to that party's injury and damage.[5]

TAB Bank has failed to meet the first element: there is no evidence that Mr. Swift made any misrepresentation to TAB Bank. In its opposition to Point Capital's motion, TAB Bank contends for the first time that Mr. Swift fraudulently concealed material information. But TAB Bank's Amended Complaint alleges fraudulent misrepresentation, not fraudulent nondisclosure. And courts regularly treat the two as separate causes of action.[6] This is no surprise, as each

---

[2] Fed. R. Civ. P. 56(a).
[3] *N. Natural Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629 (10th Cir. 2008).
[4] *Alta Indus. Ltd. v. Hurst*, 846 P.2d 1282, 1288 n.13 (Utah 1993).
[5] *Armed Forces Ins. Exch. v. Harrison*, 70 P.3d 35, 40 (Utah 2003). *See also Gold Standard, Inc. v. Getty Oil Co.*, 915 P.2d 1060, 1066–67 (Utah 1996); *Educators Mut. Ins. Ass'n. v. Allied Prop. & Cas. Ins. Co.*, 890 P.2d 1029, 1032 (Utah 1995).
[6] *See, e.g., Arnson v. My Investing Place L.L.C.*, No. 2:12-CV-865, 2013 WL 5724048, at *1, 4–5 (D. Utah Oct. 21, 2013); *Jones & Trevor Mktg., Inc. v. Lowry*, 233 P.3d 538, 541 (Utah Ct. App. 2010); *Moore v. Smith*, 158 P.3d 562, 568 (Utah Ct. App. 2007).

claim has different elements under Utah law[7] and parties are required to plead fraud with particularity.[8]  The court declines to entertain the new nondisclosure claim asserted only in response to a well-taken motion for summary judgment.

### III. Civil Conspiracy

There are five elements to civil conspiracy under Utah law: "(1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof."[9]  TAB Bank must show conspiracy "by clear and convincing evidence, which must establish that the 'circumstances are consistent only with the existence of a conspiracy.'"[10]  Mr. Swift contends that TAB Bank's civil conspiracy claim fails because there is no evidence of an overt act or a meeting of the minds.  Mr. Swift also contends that he cannot be personally liable because he was acting as an employee or agent of Point Capital.  The court addresses each argument in turn and concludes that summary judgment in favor of Mr. Swift is inappropriate on the civil conspiracy claim.

### A. Overt Act

To prevail on its civil conspiracy claim, TAB Bank must prove that the alleged conspirators (Mr. Swift and Mr. Williams) performed one or more unlawful, overt acts.[11]  TAB Bank contends that Mr. Williams committed an overt act by falsely representing that Point

---

[7] *Compare Anderson v. Kriser*, 266 P.3d 819, 823 n.11 (Utah 2011) (stating the elements for fraudulent nondisclosure are "(1) a legal duty to communicate, (2) knowledge of information not disclosed, and (3) materiality of the nondisclosed information"), *with Larsen v. Exclusive Cars, Inc.*, 97 P.3d 714, 716 (Utah Ct. App. 2004) (stating the legal elements of fraudulent misrepresentation are "(1) a representation; (2) concerning a presently existing material fact; (3) which was false; (4) which the representor either (a) knew to be false, or (b) made recklessly, knowing that he had insufficient knowledge upon which to base such representation; (5) for the purpose of inducing the other party to act upon it; (6) that the other party, acting reasonably and in ignorance of its falsity; (7) did in fact rely upon it; (8) and was thereby induced to act; (9) to his injury and damage").

[8] Fed. R. Civ. P. 9(b).

[9] *Peterson v. Delta Air Lines, Inc.*, 42 P.3d 1253, 1257 (Utah Ct. App. 2002) (citation omitted).

[10] *Israel Pagan Estate v. Cannon*, 746 P.2d 785, 793 (Utah Ct. App. 1987) (emphasis in original).

[11] *Id.* at 792; *Peterson*, 42 P.3d at 1257.

Capital would pledge its carried interest in Last Mile.  In rejoinder, Mr. Swift argues that the conspiracy claim is entirely dependent on the fraud claim against him.  Thus, Mr. Swift contends, the conspiracy claim fails because TAB Bank has failed to show that he committed fraud.  However, "[c]ivil conspiracy is essentially a tool allowing a plaintiff injured by the tort of one party to join and recover from a third party who conspired with the tortfeasor to bring about the tortious act or in other words, a method of imposing vicarious liability."[12]  Put differently, a defendant may be liable for civil conspiracy even though he did not commit the overt act.[13]

      The question becomes whether there is evidence that Mr. Swift's coconspirator, Mr. Williams, committed an overt act.  TAB Bank maintains that Mr. Williams committed an overt act in furtherance of the conspiracy when he made fraudulent misrepresentations to TAB Bank in order to obtain the Helping Hands loan.  TAB Bank points to an email from Mr. Williams to TAB Bank employees that stated Point Capital would "pledge its capital and earned profits from entities that are managed by the Point Capital Portland business unit. This includes the capital and earned/carried profits in Last Mile Properties, LLC . . . ."  Despite this email, Mr. Williams testified that he did not intend to pledge the Last Mile carried interest at the time the loan closed.  TAB Bank also presents evidence that its negotiating team believed that Point Capital would provide a security interest in its "direct and indirect investments in venture and hedge funds," including interests in Last Mile.  Lastly, TAB Bank submits evidence that Mr. Williams later reversed his position by claiming that Point Capital had not pledged the Last Mile interest.

      Mr. Swift puts forth evidence that Mr. Valdez, TAB Bank's chief loan officer, knew before the deal was consummated that Point Capital could not pledge the Last Mile interest.  Mr.

---

[12] *Boisjoly v. Morton Thiokol, Inc.*, 706 F. Supp. 795, 803 (D. Utah 1988).  *See also Beck v. Prupis*, 529 U.S. 494 (2000) ("civil conspiracy . . . is a means for establishing vicarious liability for the underlying tort").

[13] *See Israel Pagan Estate*, 746 P.2d at 792 ("Since [defendant] did not, by its own actions, defraud [plaintiff] or authorize another to do so, [defendant's] liability can only be established by proving that it was engaged in a conspiracy to defraud.").

5

Swift contends that Mr. Valdez's knowledge should be imputed to TAB Bank, meaning TAB Bank could not have reasonably relied on any representation that Point Capital would pledge the Last Mile interest. The competing evidence creates a factual dispute regarding whether Mr. Williams made fraudulent misrepresentations to TAB Bank.

### B. Meeting of the Minds

To prove that a conspiracy to defraud existed, "there must be substantial proof of circumstances from which it reasonably follows, or at least may be reasonably inferred, that the conspiracy existed. It cannot be established by conjecture and speculation alone."[14] That said, TAB Bank does not need to prove that the parties entered into a formal agreement to commit fraud.[15] Rather, "conspiracy may be inferred from circumstantial evidence, including the nature of the act done, the relations of the parties, and the interests of the alleged conspirators."[16] TAB Bank must show that Mr. Swift "knowing[ly] and intentional[ly] participated in the fraud"[17] and that he and Mr. Williams were "united in a scheme to defraud the plaintiff[s]."[18]

Mr. Swift testified that he did not directly negotiate the loan and that Mr. Williams was responsible for the real-estate side of the business. Conversely, TAB Bank submits evidence that Mr. Swift was involved in the internal discussions among Point Capital employees regarding the loan. This evidence includes emails discussing the loan agreement that Mr. Swift received and responded to. Also, Andrew Preston (a Point Capital employee) testified that he had ongoing communications with Mr. Swift about the loan negotiations and "what [security] was being asked for" by TAB Bank. Mr. Williams further testified that Mr. Swift signed the Last Mile operating

---

[14] *Id.* at 791 (quoting *Dill v. Rader*, 583 P.2d 496, 499 (Okla.1978)).
[15] *Id.*
[16] *Id.*
[17] *Lawrence v. Intermountain, Inc.*, 243 P.3d 508, 513 (Utah Ct. App. 2010).
[18] *Israel Pagan Estate*, 746 P.2d at 793.

agreement, stayed updated on the status of the Last Mile project, and was aware that Point Capital pledged the Last Mile interest.

Additionally, TAB Bank presents evidence that Mr. Swift acknowledged that Point Capital pledged the Last Mile interest but later denied it. Mr. Swift wrote in an email to Mr. Williams, "This morning I had a well-tempered conversation with [Mr. Preston]. He is upset that the embedded profits from the Last Mile business are collateral for the [Helping Hands] loan from TAB Bank. He is correct that they are." Yet Mr. Preston testifies that, a week after Mr. Swift's email, both Mr. Swift and Mr. Williams denied that Point Capital had pledged the Last Mile interest. Finally, as a managing member of Point Capital, Mr. Swift had an interest in the loan agreement and was directly connected to Mr. Williams—the person who allegedly made fraudulent misrepresentations.

The court acknowledges that TAB Bank has submitted no direct evidence that Mr. Swift and Mr. Williams explicitly agreed to defraud TAB Bank. Candidly, the lack of any direct evidence that Mr. Swift and Mr. Williams were "united in a scheme to defraud"[19] makes the summary judgment question a close call. At this stage, the court must examine the record and draw all reasonable and justifiable inferences in the light most favorable to TAB Bank as the nonmoving party.[20] With this standard in mind, the court concludes that a factfinder could make a reasonable inference from the circumstantial evidence that there was a meeting of the minds. This fact-intensive question is best resolved at trial.

---

[19] *Id.* at 793.
[20] *See, e.g.*, *Yurmann v. West*, 182 F.3d 934 (10th Cir. 1999).

### C. Mr. Swift's Personal Liability

Mr. Swift contends that he cannot be personally liable for conspiracy because he was an employee or agent of Point Capital. But Mr. Swift does not cite to any Utah case law supporting that proposition.[21] What's more, a corporate employee is liable under Utah law for "fraudulent acts or false representations of *his own or in which he participates*, even though his action in such respect may be in furtherance of the corporate business."[22] The parties do not cite to a Utah case that directly addresses whether corporate employees may be coconspirators. But the cited Utah authority appears to allow a cause of action against a corporate employee or agent for fraudulent acts of "his own or in which he participates." At bottom, Mr. Swift's status as a corporate employee or agent does not shield him from liability for civil conspiracy in this instance.

### CONCLUSION

For the reasons stated, the court GRANTS IN PART and DENIES IN PART Mr. Swift's Motion for Summary Judgment (Dkt. 85).[23] As a result, the court DISMISSES TAB Bank's fraud and unjust enrichment causes of action against Mr. Swift.

Further, the court GRANTS TAB Bank's unopposed motions for summary judgment (Dkt. Nos. 110 and 113). The court GRANTS summary judgment in favor of TAB Bank on its first and second causes of action. The court also DISMISSES Helping Hands and Point Capital's counterclaims.

---

[21] The parties do not dispute that Utah law applies.
[22] *Armed Forces Ins. Exch. v. Harrison*, 70 P.3d 35, 41 (Utah 2003) (emphasis in original).
[23] TAB Bank's Opposition to the Motion for Summary Judgment (Dkt. 91) does not appear to comply with Local Rule DUCivR 10-1 regarding the required format of papers submitted to the court. The court accepts the opposition, but admonishes counsel to comply with the rule in subsequent filings.

**SO ORDERED** this 29th day of May, 2015.

                BY THE COURT:

                _____
                U.S. District Court Judge